**MARSHALL CONSTRUCTION COMPANY, Plaintiff,**

v.

**M. BERGER COMPANY, Defendant.**

**Civ. No. 81–2288.**

United States District Court,
W. D. Arkansas,
Fort Smith Division.

Jan. 8, 1982.

On Motion to Removal Feb. 23, 1982.

publishers.

James M. Dunn, Warner & Smith, Fort Smith, Ark., for plaintiff.

William M. Thompson, Thompson, Paddock & Llewellyn, Fort Smith, Ark., for defendant.

## MEMORANDUM OPINION

WATERS, Chief Judge.

On November 9, 1981, the plaintiff filed suit in the Circuit Court of Logan County, Arkansas, against the defendant alleging that in October, 1980, the defendant, a corporation organized in a state other than Arkansas, mailed to plaintiff at its address in Booneville, Arkansas, a circular containing advertisements for various items of commercial, industrial, and construction supplies and equipment. It is alleged that as a result of the circular the plaintiff purchased from the defendant two Rotation Drills used in the construction business in which plaintiff was engaged. The complaint alleges that the drills were ordered for a package price of $11,000.00, collect and C.O.D., and that when they were received in Booneville, Arkansas, on December 29, 1980, the plaintiff paid to the defendant the sum of $11,309.17, which included freight.

It is alleged that when the drills were received, the plaintiff discovered that one of the drills which was advertised in the circular as being "NEW" was, in fact, used and in poor condition, and that the other drill advertised to be "USED, GOOD CONDITION" was, in fact, beyond repair and totally useless to the plaintiff for the purposes for which it was purchased. In addition, it is alleged that one of the drills was not even of the type ordered. When the plaintiff discovered the nonconformities described in the complaint, at the direction of the defendant, the drills were returned to the defendant at its place of business in Pittsburgh, Pennsylvania.

The complaint alleged that after plaintiff returned the drills to the defendant, defendant agreed to furnish to plaintiff an additional drill, in new condition, to replace one of the drills ordered, and to issue plaintiff a credit of $4,000.00 in place of the other. It is alleged that when the new drill was received, it was in poor condition, with missing parts, and totally unfit to use for the purpose for which it was purchased, and plaintiff again notified the defendant of the defective condition, but that defendant failed and refused to take any further action to remedy the situation. Plaintiff alleges that it then expended the sum of $3,847.18 for the repair of the drill that it had received in order to avoid further delay so that it could use the drill in its construction business for which it was ordered.

Plaintiff alleges in the complaint that defendant breached certain express warranties by shipping it the goods described in the complaint, and that it intentionally or negligently misrepresented the drills in question to the plaintiff when it knew or should have known the true facts, causing the plaintiff to rely upon such misrepresentations, to its detriment. Plaintiff prayed for judgment against the defendant in the sum of $22,437.18 actual damages, and for punitive damages in the amount of $10,-000.00 "for the intentional, false and fraudulent misrepresentation made by defendant to plaintiff." It also prayed for incidental and consequential damages, attorneys' fees, costs and all other proper relief.

After defendant was properly served with a summons and a copy of the complaint, it removed the matter to this Court, and in the petition for removal, it confirmed that there was a complete diversity of citizenship between the parties.

The defendant then filed a motion to dismiss, contending that it is not subject to suit in Arkansas.

In response to the motion to dismiss, plaintiff filed the affidavit of Don N. Marshall, the president of Marshall Construction Company, which provided, in pertinent part, as follows:

*        *        *        *        *        *

2. That I personally placed the orders for drills described in the Complaint herein, and those drills were shipped to me by Defendant, cash on delivery.

3. I further state that I have been receiving circulars on a monthly basis from Defendant, advertising various items of industrial and commercial tools, equipment, and supplies. I have been receiving these circulars from Defendant for approximately three years, and they typically contain 24 pages of advertising.

4. During the past three years or so, Marshall Construction Company has placed between 15 and 20 orders for tools, equipment, and supplies, and the total amount paid for such orders to Defendant has approximated $10,000.00, exclusive of the drills purchased as alleged in the Complaint. Many orders that I have placed have been sent to me by Defendants, cash on delivery.

The attorneys for the parties have prepared and filed briefs setting forth their contentions, and the Court has considered the pleadings filed herein, the affidavit referred to above, and the briefs of counsel, and determines that, for the reasons stated below, the Court does have personal jurisdiction over the defendant.

Ark.Stat.Ann. § 27–2502 C. provides, in pertinent part, as follows;

1. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a (cause of action) (claim for relief) arising from the person's

(a) transacting any business in this state;

*        *        *        *        *        *

2. When jurisdiction over a person is based solely upon this section, only a (cause of action) (claim for relief) arising from acts enumerated in this section may be asserted against him.

■ "Whether a state long-arm statute applies in any particular case is a question of state law." *Caesar's World, Inc. v. Spencer Foods, Inc.*, 498 F.2d 1176, 1179

(8th Cir. 1974). Under Arkansas law, "the plaintiff has the burden of proving that a non-resident defendant has sufficient contacts with Arkansas to be sued *in personam.*" *Hawes Firearms Co. v. Roberts*, 263 Ark. 510, 512, 565 S.W.2d 620 (1978). However, the non-resident defendant filing a motion to dismiss or quash, "has the burden of going forward and offering proof to sustain the allegations (of no jurisdiction)." *Ibid.* at 513, 565 S.W.2d 620.

■ Although, as pointed out above, the plaintiff filed an affidavit setting forth in detail the alleged activities on the part of the defendant which, in the view of the Court, indicates that it had substantial contacts with the state of Arkansas, the defendant has not seen fit to file any counter-affidavit or, in any other way, attempt to controvert the facts set forth in Mr. Marshall's affidavit. Thus, the matters contained in the affidavit filed in behalf of the plaintiff remain uncontroverted, even though, as pointed out above, the defendant has the burden of going forward and offering proof to sustain the allegations of no jurisdiction. Thus, the Court must find that the state of the file at this time indicates that not only did the plaintiff purchase the drills in question in this case from the defendant, but that the defendant, on a monthly basis, solicited orders from the plaintiff by sending to it circulars, typically containing 24 pages of advertising, describing and soliciting orders for various items of industrial and commercial tools, equipment and supplies. The Court must also find for purposes of this motion that not only did the defendant engage in this activity for the period during which the drills in question were ordered, but for a period of three years, and that during such time, the plaintiff placed between 15 and 20 orders for tools and equipment to be shipped by the defendant, and paid for such tools and equipment an amount approximating $10,-000.00, exclusive of the amount paid for the drills in question. Since those facts must be taken as true for purposes of ruling on this motion, there can be little question but that it meets the requirement of the statute allowing personal jurisdiction in a case where defendant transacts "any business" in the state of Arkansas. It certainly transacted some business and it appears to be beyond any rational argument that the terms of Ark.Stat.Ann. § 27–2502 C. provide for personal jurisdiction over the defendant in this case. The provisions of subparagraph 2 of this statute are also clearly met, because plaintiff's cause of action certainly arises from defendant's transaction of business in the state of Arkansas, since the claim is for damages which plaintiff claims resulted from the very sale which resulted from defendant's transaction of business in the state.

Having held that the Arkansas long-arm statute authorizes personal jurisdiction over defendant, we must inquire whether the exercise of that jurisdiction would violate the due process clause of the United States Constitution. In arguing that it does, the defendant cites the cases of *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); and *Roger N. Joyce & Associates, Inc. v. Paoli Steel Corp.*, 491 F.Supp. 1095 (E.D.Ark. 1980). Unlike the situation presented in those cases and in cases such as *Hutson v. Fehr Bros.*, 584 F.2d 833 (8th Cir. 1978), the defendant in the case at bar has carried on substantial activities in the state of Arkansas with the plaintiff, not only regularly soliciting orders from it over a three-year period, but also accepting, during such time, a substantial number of orders from the plaintiff, receiving from it payment in excess of $20,000.00. This was not the case in the activities carried on by the defendants in the cases cited by the defendant in its brief, and these cases are clearly distinguishable from the case at bar on the facts present.

■ As the plaintiff pointed out in its brief, only the defendant knows how pervasive its activities in Arkansas are, but it is apparent that it has derived considerable revenue from its dealings with plaintiff alone. It is also important to note, as indi-

cated above, that the defendant has not seen fit to file anything with the Court which indicates what its activities are in Arkansas even though it is the only party in this suit which is in a position to know how extensively it engages in business in Arkansas. However, suffice it to say that the activities which it carried on with plaintiff, when considered alone, are sufficient for the Court to have *in personam* jurisdiction over it. Certainly the contacts arising from its dealings with plaintiff go far beyond what Professor Leflar would require in order for a defendant to be subject to suit in a forum state. In *American Conflicts of Law* (3d Edition), Section 39, Dr. Leflar stated:

The making of a single contract in the state will often suffice to sustain the state's jurisdiction and causes of action arising out of the contract. It will not suffice, however, to sustain jurisdiction if local completion of the contract is mere happenstance.... But if the contract was made in F[orum] by deliberate choice as a place of contracting, or because that was where the contemplated transaction was centered, or because the contract was to be performed there, the contacts are substantial.

\* \* \* \* \* \*

Actions by the buyer against the seller, in the buyer's state, seem fair, since the seller knowingly sends the possibly defective goods there. Leflar, *supra*, P. 69, 71.

The activities which the defendant carried on with the plaintiff in this case also go far beyond those which the Courts found were sufficient to subject the defendant to suit in Arkansas in *Dreyfus Co., Inc. v. Royster Co.*, 487 F.Supp. 531 (E.D.Ark. 1980). In that case, the defendant ordered, by telephone, soybeans from the plaintiff in Arkansas, to be shipped out of state. When the seller sued the defendant for breach of the purchase contract, Judge Henry Woods found that this transaction between the parties, when coupled with the fact that they had a similar transaction the previous year, was sufficient to allow the Court to exercise *in personam* jurisdiction over the defendant.

The defendant concluded its brief in this case by stating:

To require the defendant to defend this action in Arkansas would be unfair, unreasonable, and offend traditional notions of fair play and substantial justice.

As the Arkansas Supreme Court said in *International Harvester Co. v. Hendrickson Mfg. Co.*, 249 Ark. 298, 459 S.W.2d 62 (1970):

It must be remembered that the standard of "fair play and substantial justice" is not to be utilized solely for the benefit of non-resident defendants, but rather it is an equal guarantee to consumer-plaintiffs of a just, convenient and reasonable forum in which to try their suit.

To allow the defendant to solicit business in Arkansas regularly over a three-year period and to accept substantial orders during such time, deriving substantial revenue therefrom, but then to tell this plaintiff that it will have to go to Pittsburgh, Pennsylvania, to sue the defendant, certainly does not, in the Court's view, promote "traditional notions of fair play and substantial justice." To the contrary, traditional notions of fair play and substantial justice require, under the facts set forth in the affidavit filed in behalf of the plaintiff and in light of the allegations of the complaint, that plaintiff be allowed to sue the defendant in Arkansas.

The motion to dismiss filed by the defendant will be denied and a separate order will be entered in accord with this opinion, giving the defendant twenty (20) days to plead further.

### On Motion To Remand

Plaintiff has filed a motion to remand this matter, alleging that defendant's petition for removal is insufficient to divest the state court of jurisdiction in that the petition for removal fails to allege the corporate citizenships of plaintiff and defendant both at the time the state court action was filed and at the time the cause of action was removed. To support its motion for remand, the plaintiff points to the jurisdic-

tional allegations of the petition for removal which are:

3. The controversy herein is between citizens of different states, the plaintiff being a corporation organized and existing by virtue of the laws of Arkansas with its principal place of business and residence in Logan County, Arkansas and the defendant being a corporation organized and existing by virtue of the laws of a state other than Arkansas with its residence and principal place of business being in the state of Pennsylvania.

\* \* \* \* \* \*

5. The cause of action set forth in the complaint against the defendant is one in which the District Court of the United States has original jurisdiction.

In its brief, plaintiff correctly points out that the law clearly is that the removing party must allege complete diversity of citizenship, both at the time of the filing of the action in the state court and at the time of its removal from the state to federal court. It cites in support of its conclusion *Stevens v. Nichols*, 130 U.S. 230, 9 S.Ct. 518, 32 L.Ed. 914 (1889); *Jackson v. Allen*, 132 U.S. 27, 10 S.Ct. 9, 33 L.Ed. 249 (1889); *Garza v. Midland National Insurance Company*, 256 F.Supp. 12 (S.D.Fla.1966); and *Carlton Properties, Inc. v. Crescent City Leasing Corporation*, 212 F.Supp. 370 (E.D.Penn. 1962).

Defendant has responded and naturally takes the position that the matter should not be remanded. It argues that, in determining the right of removal, the Court is not confined to the petition for removal, but should consider the record as a whole. *Doggett v. Hunt*, 93 F.Supp. 426 (D.C.Ala. 1950); *Roper Corporation Newark Division v. Farrow*, 300 F.Supp. 103; and *Crosby v. Paul Hardeman, Inc.*, 414 F.2d 1 (8th Cir. 1969).

After urging that the entire record be examined in determining whether there was a complete diversity both at the time suit was filed in state court and at the time of the removal, the defendant then points to paragraph 1 of the complaint filed in state court in which it is alleged, among other things, that the plaintiff is an Arkansas corporation with its principal place of business in Arkansas and that the defendant is a corporation organized under the laws of a state other than Arkansas, but engaged in the sale by direct mail solicitation and otherwise of commercial and industrial tools, equipment and supplies. It is further alleged that the purchased drills were returned to defendant's place of business in Pittsburgh, Pennsylvania, and it is argued that it is clear from these allegations that the defendant did not have its principal place of business in Arkansas. Defendant apparently wants the Court to infer that if defendant had its principal place of business in Arkansas, it would not have been necessary for it to solicit business by mail nor that plaintiff return the purchased drills to defendant's place of business in Pittsburgh, Pennsylvania. It is also claimed that the record shows that the summons was issued to "a nonresident corporation" and that it shows defendant's address as "South 6th and Bingham Streets, Pittsburgh, Pennsylvania 15203."

Defendant also points to the allegations contained in the petition for removal which are couched in the present tense, and argues that when the entire record is taken as a whole, it is clear that there was a complete diversity both at the time suit was filed and at the time of the removal.

■ The Court recognizes that some courts, in construing petitions for removal, hold that the requirement of 28 U.S.C. § 1446(a) which requires a "plain statement of the facts which entitle" the removing party to removal is to be strictly applied and that a mere conclusion is insufficient. *See, e.g., Gratz v. Murchison*, 130 F.Supp. 709 (D.C.Delaware 1955), and *Smith v. Southern Pac. Co.*, 187 F.2d 397 (9th Cir. 1951). However, the Court believes that the better rule is that the same liberal rules employed in testing the sufficiency of a pleading should apply to a removal petition. *Brown v. City of Meridian*, 356 F.2d 602 (5th Cir. 1966); *Allman v. Hanley*, 302 F.2d 559 (5th Cir. 1962); *Harris Diamond Co. v.*

*Army Times Publishing Co.*, 280 F.Supp. 273 (D.C.N.Y.1968); *Harlem River Produce Co. v. Aetna Casualty and Surety Co.*, 257 F.Supp. 160 (D.C.N.Y.1965); and *Kerbow v. Kerbow*, 421 F.Supp. 1253 (D.C.Tex.1976).

 The Court believes that even if the liberal rules of notice pleading are applied to the petition for removal and the entire file that has been developed in this case is considered, defendant has still not sufficiently pled or shown a complete diversity of citizenship between the parties.

However, the defendant has, alternatively, moved the Court for leave to amend its petition for removal if the Court believes that it is technically defective. Plaintiff argues that, since the thirty days given for removal has expired, such an amendment should not be allowed. The case law addressing this question has, as might be expected, reached no unanimous decision. As stated in 13 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3733, at p. 735:

> The application of this rule is unclear in situations in which neither the complaint nor the petition alleges the principal place of business of a corporate party, as has been required since 1958 for purposes of determining the existence of diversity jurisdiction. This omission is considered a jurisdictional defect, and a few district court cases refuse to allow amendment to allege the principal place of business after the expiration of the 30 days permitted by the statute to petition for removal. (citing cases) But the cases to the contrary, which have allowed amendment for that purpose after the 30-day period and even as late as appeal, are more consistent with the general rule as to the pleading amendments, and with section 1653 of Title 28, which permits defective allegations of jurisdiction to be amended, upon terms, in either the trial or appellate court. (citing cases) The cases denying amendment seem unnecessarily grudging in their attitude, as do some of the decisions dealing with other types of amendments of the petition.

The Court believes that the better reading of 28 U.S.C. § 1653 is that an amendment may be allowed to correct defective allegations of jurisdiction after the 30-day removal period has expired. Defendant will be granted ten days from the date of this memorandum opinion to amend its petition for removal to more artfully allege a complete diversity of citizenship.

Nothing in this opinion should be construed to indicate that the Court will be lenient in allowing matters to remain in federal court that should not be there. The Court recognizes that federal courts are courts of limited jurisdiction and that the party seeking to invoke the jurisdiction of the court must demonstrate that the case is within the competence of the court. However, the Court is reluctant to remand a case which was at the time suit was filed and at the time the petition for removal was filed clearly removable simply because the drafter of the petition for removal did not draft it as artfully as he might have.